IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ERNEST CONTRERAS,

    Petitioner,                                 No. CIV S-08-CV-0364 LLK CHS P

    vs.

D.K. SISTO,

    Respondent.                              <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

I.    INTRODUCTION

        Petitioner, Ernest Contreras, is a state prisoner proceeding pro se with a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Petitioner is currently serving an indeterminate sentence of twenty-four years to life following his 1981 conviction in Riverside County Superior Court for attempted murder and second degree murder with the use of a firearm. Here, petitioner does not challenge the constitutionality of that conviction, but rather, the execution of his sentence, and specifically, the August 24, 2006 decision by the Board of Parole Hearings finding him unsuitable for parole.

II.    ISSUES PRESENTED

        Petitioner contends that the Board's decision was unsupported by any relevant or reliable evidence. Petitioner further contends that there was no rational nexus or link between the

1

reasons cited by the Board for denying parole and the evidence used to support it. Petitioner concludes that the Board's decision was arbitrary and capricious, in violation of his federal right to due process. After careful consideration of the record and applicable law, it is recommended that this petition for writ of *habeas corpus* relief be denied.

III.   FACTUAL BACKGROUND

The basic facts of Petitioner's life crime were summarized from the Board Report's Statement of Facts at his August 24, 2006 parole suitability hearing:

> On February 28, 1981, inmate Contreras was attending a wedding reception at the Pedley Town Hall in Riverside County, California. While at this wedding, Contreras got involved in a physical altercation with other attendees of this gathering. During the course of this altercation, inmate Contreras was threatened with a knife and told by other attendees to leave the event. As Contreras left, he randomly fired a 38-caliber handgun into the group that he had been fighting with and struck two victims. Katherine Perez, age 24, was shot in the heart and died at the scene. Alfonso Alcola (phonetic) was struck with a bullet that entered his right side and exited through his left side, seriously wounding him. He recovered from his wounds.
>
> . . . The Prisoner was interviewed on December 6th of 2004 and told his counselor his version of the circumstances of the offense, which were somewhat consistent with the facts mentioned in the police report. Inmate Contreras stated that his friend had got [sic] into an altercation with several people at the wedding and that he had come to the aid of his friend. He also indicated that he, Contreras, fired the shots after the vehicle in which he was riding and [sic] had been wedged in traffic. A number of individuals with whom he had been fighting with were advancing and started throwing bottles at them. Contreras did say that there was a discrepancy in his version in that Contreras claims that he did not fire the weapon randomly or directly at the victims, but that he fired the weapon into the ground where the crowd of people were pursuing him. It's this inmate's statement that the victims were hit with a ricochet off the gravel driveway.

(Transcript of August 24, 2006 Hearing, Pet. Ex. C. at 11-12.)

Petitioner was received into state prison on December 24, 1981. His minimum eligible parole date passed on June 4, 1995. On August 24, 2006, Petitioner appeared before the Board of Parole Hearings (the "Board") for his eighth subsequent parole hearing. After considering various positive and negative suitability factors, including the nature of the commitment offense, the panel concluded that Petitioner would pose an unreasonable risk of danger to society if released, and thus he was not suitable for parole. Petitioner sought *habeas corpus* relief in the Riverside

2

County Superior Court. The petition was denied without statement of a reasoned explanation. The superior court held that the Board's decision was supported by the record and was not, therefore, arbitrary or capricious. Petitioner then sought relief in the state appellate courts. The California Court of Appeal for the Fourth Appellate District denied the petition summarily. The California Supreme Court denied review. Petitioner filed this federal petition for writ of *habeas corpus* on February 19, 2008. Respondent filed an answer on June 29, 2009, and Petitioner filed a traverse on August 4, 2009.

IV.     APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

This case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of *habeas corpus* filed after its enactment on April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997). Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 n. 7 (2000). Federal *habeas corpus* relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Although "AEDPA does not require a federal habeas court to adopt any one methodology," *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003), there are certain principles which guide its application.

First, AEDPA establishes a "highly deferential standard for evaluating state-court rulings." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Accordingly, when determining whether the law applied to a particular claim by a state court was contrary to or an unreasonable application

3

1 of "clearly established federal law," a federal court must review the last reasoned state court
2 decision. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004); Avila v. Galaza, 297 F.3d 911,
3 918 (9th Cir. 2002). Provided that the state court adjudicated petitioner's claims on the merits, its
4 decision is entitled to deference, no matter how brief. *Lockyer*, 538 U.S. at 76; *Downs v. Hoyt*, 232
5 F.3d 1031, 1035 (9th Cir. 2000). Conversely, when it is clear that a state court has not reached the
6 merits of a petitioner's claim, or has denied the claim on procedural grounds, AEDPA's deferential
7 standard does not apply and a federal court must review the claim *de novo*. *Nulph v. Cook*, 333 F.3d
8 1052, 1056 (9th Cir. 2003); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

9 Second, "AEDPA's, 'clearly established Federal law' requirement limits the area of
10 law on which a habeas court may rely to those constitutional principles enunciated in U.S. Supreme
11 Court decisions." *Robinson*, 360 F.3d at 155-56 (citing *Williams*, 529 U.S. at 381). In other words,
12 "clearly established Federal law" will be " the governing legal principle or principles set forth by
13 [the U.S. Supreme] Court at the time a state court renders its decision." *Lockyer*, 538 U.S. at 64.
14 It is appropriate, however, to examine lower court decisions when determining what law has been
15 "clearly established" by the Supreme Court and the reasonableness of a particular application of that
16 law. *See Duhaime v. Ducharme*, 200 F.3d 597, 598 (9th Cir. 2000).

17 Third, the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have
18 "independent meanings." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the "contrary to" clause,
19 a federal court may grant a writ of *habeas corpus* only if the state court arrives at a conclusion
20 opposite to that reached by the Supreme Court on a question of law, or if the state court decides the
21 case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*,
22 529 U.S. at 405. It is not necessary for the state court to cite or even to be aware of the controlling
23 federal authorities "so long as neither the reasoning nor the result of the state-court decision
24 contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Moreover, a state court opinion need not
25 contain "a formulary statement" of federal law, but the fair import of its conclusion must be
26 consistent with federal law. *Id*.

4

Under the "unreasonable application" clause, the court may grant relief "if the state court correctly identifies the governing legal principle...but unreasonably applies it to the facts of the particular case." *Bell*, 535 U.S. at 694. As the Supreme Court has emphasized, a court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 410. Thus, the focus is on "whether the state court's application of clearly established federal law is *objectively* unreasonable." *Bell*, 535 U.S. at 694 (emphasis added).

Finally, the petitioner bears the burden of demonstrating that the state court's decision was either contrary to or an unreasonable application of federal law. *Woodford*, 537 U.S. at 24 ; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

V.   DISCUSSION

   A.   DUE PROCESS IN THE CALIFORNIA PAROLE CONTEXT

The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits state action that "deprive[s] a person of life, liberty or property without due process of law." U.S. CONST. AMEND. XIV, § 2. A person alleging a due process violation must demonstrate that he or she was deprived of a protected liberty or property interest, and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Ky. Dep't. Of Corrs. v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002). A protected liberty interest may arise from either the Due Process Clause itself or from state laws. *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). In the context of parole, the United States Constitution does not, in and of itself, create a protected liberty interest in the receipt of a parole date, even one that has been set. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981). However, when a state's statutory parole scheme uses mandatory language, it "'creates a presumption that parole release will be granted' when or unless certain designated findings are made, thereby giving rise to a constitutional liberty interest." *McQuillan*, 306 F.3d at 901 (quoting *Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 12 (1979)).

5

1 Under California law, prisoners serving indeterminate prison sentences "may serve 2 up to life in prison, but they become eligible for parole consideration after serving minimum terms 3 of confinement." *In re Dannenberg*, 34 Cal.4th 1061, 1078 (2005). Generally, one year prior to an 4 inmate's minimum eligible parole release date, the Board will set a parole release date "in a manner 5 that will provide uniform terms for offenses of similar gravity and magnitude in respect to their 6 threat to the public." *In re Lawrence*, 44 Cal. 4th at 1202 (citing CAL. PENAL CODE § 3041(a)). A 7 release date will not be set, however, if the Board determines "that the gravity of the current 8 convicted offense or offenses, or the timing and gravity of current or past convicted offense or 9 offenses, is such that consideration of the public safety requires a more lengthy period of 10 incarceration...." CAL. PENAL CODE § 3041(b). California state prisoners who have been sentenced 11 to prison with the possibility of parole have a clearly established, constitutionally protected liberty 12 interest in receipt of a parole release date. *Allen*, 482 U.S. at 377-78 (quoting *Greenholtz*, 442 U.S. 13 at 12); *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007) (citing *Sass v. Cal. Bd. of Prison Terms*, 14 461 F.3d 1123, 1128 (9th Cir. 2006)); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); 15 *McQuillion*, 306 F.3d at 903.

16 In the context of parole proceedings, it is well established that inmates are not 17 guaranteed the "full panoply of rights" afforded to criminal defendants under the Due Process 18 Clause. *See Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). Nonetheless, inmates 19 are afforded limited procedural protections. The Supreme Court has held that a parole board's 20 procedures are constitutionally adequate so long as the inmate is given an opportunity to be heard 21 and a decision informing him of the reasons he did not qualify for parole. *Hayward v. Marshall*, 603 22 F.3d 546, 560 (9th Cir. 2010) (quoting *Greenholtz*, 442 U.S. at 16). As a matter of state 23 constitutional law, denial of parole to California inmates must be supported by "some evidence" 24 demonstrating future dangerousness. *Id*. at 562 (9th Cir. 2010) (citing *In re Rosencrantz*, 29 Cal.4th 25 616, 128 (2002)). *See also In re Lawrence*, 44 Cal.4th 1181, 1191 (2008) (recognizing the denial 26 of parole must be supported by "some evidence" that an inmate "poses a current risk to public

6

safety"); *In re Shaputis*, 44 Cal.4th 1241, 1254 (2008) (same). "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of [the] state," *Cooke v. Solis*, No. 06-15444 (9th Cir. June 4, 2010), and compliance with this evidentiary standard is, therefore, mandated by the federal Due Process Clause. *Pearson v. Muntz*, No. 08-55728, slip. op. at 5 (9th Cir. May 24, 2010). Thus, a federal court undertaking review of a "California judicial decision approving the...decision rejecting parole" must determine whether the state court's decision "was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Hayward*, 603 F.3d at 562-63 (quoting 28 U.S.C. § 2254(d)(2)).

When assessing whether a state parole board's suitability decision was supported by "some evidence," the analysis "is framed by the statutes and regulations governing parole suitability determinations in the relevant state." *Irons*, 505 F.3d at 851. The court must

> look to California law to determine the findings that are necessary to deem [a petitioner] unsuitable for parole, and then must review the record to determine whether the state court decision holding that these findings were supported by 'some evidence' [] constituted an unreasonable application of the 'some evidence' principle."

*Id.*

Title 15, Section 2402 of the California Code of Regulations sets forth various factors to be considered by the Board in its parole suitability findings for murderers. The regulation is designed to guide the Board's assessment regarding whether the inmate poses an "unreasonable risk of danger to society if released from prison," and thus whether he or she is suitable for parole. *In re Lawrence*, 44 Cal.4th at 1202. The Board is directed to consider all relevant, reliable information available, including

> the circumstances of the prisoner's: social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the

7

prisoner's suitability for release.

15 CAL. CODE REGS. § 2402(b). The regulation also lists several specific circumstances which tend to show suitability or unsuitability for parole. 15 CAL. CODE REGS. § 2402(c)-(d). The overriding concern is public safety, *In re Dannenberg*, 34 Cal.4th 1061, 1086 (2005), and the focus is on the inmate's current dangerousness. *In re Lawrence*, 44 Cal.4th at 1205. Thus, under California law, the standard of review is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates that a parolee's release would unreasonably endanger public safety. *In re Shaputis*, 44 Cal.4th 1241, 1254 (2008). Therefore, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public." *In re Lawrence*, 44 Cal4th at 1212. In other words, there must be some rational nexus between the facts relied upon and the ultimate conclusion that the prisoner continues to be a threat to public safety. *Id*. at 1227.

### B. PETITIONER'S DUE PROCESS RIGHTS WERE NOT VIOLATED BECAUSE THE BOARD'S DECISION IS NOT ARBITRARY AND IS SUPPORTED BY SOME EVIDENCE

Petitioner alleges that his Due Process rights were violated by the Board of Parole's decision to deny him parole for the eighth successive time. Petitioner argues that he meets nearly all of the criteria tending to demonstrate parole suitability and could not possibly comply to a greater degree with any of the factors. According to Petitioner, therefore, the record clearly does not support the reasons offered by the Board for denying him parole. Respondent, on the other hand, argues that Petitioner has been afforded all process he was due in his parole proceeding because he was provided with an opportunity to be heard and a statement of reasons for the Board's decision. Respondent denies that "some evidence" is the proper evidentiary standard under which this Court must evaluate the Board's decision. Nonetheless, Respondent also argues that Petitioner has failed to demonstrate that the Board's decision lacked "some evidence" that Petitioner would pose an unreasonable risk of danger to society or a threat to public safety if released on parole.

8

On the record in this case, it is apparent that the evidence relied upon by the Board to deny Petitioner parole was sufficient to meet the requirements imposed by the Due Process Clause. The Board conducted Petitioner's suitability hearing interactively with Petitioner and his counsel regarding his attitude towards the commitment offense, his prior social and criminal history, letters of support, discipline and progress since his incarceration, his substance abuse history and treatment, and his psychological evaluation. The transcript of Petitioner's parole hearing clearly reflects that the Board denied him parole based upon the following factors: (1) the facts, circumstances and nature of Petitioner's commitment offense; (2) Petitioner's criminal history; (3) Petitioner's prison disciplinary history; (4) Petitioner's substance abuse history and his inconsistent participation in substance abuse programming; (5) Petitioner's psychological evaluation and his inconsistent participation in self-help programming and; (6) Petitioner's lack of realistic and viable plans regarding his post-release residence, employment, and substance abuse programming.

The Board determined that Petitioner was not yet suitable for parole and that he would pose an unreasonable risk of danger to society or a threat to public safety if released. In making this determination, the Board relied heavily on the facts and circumstances of Petitioner's commitment offense, noting that it was "carried out in an especially cruel and callous manner," a "dispassionate manner," and in "a manner which demonstrates an exceptionally callous disregard for human suffering." (Pet. Ex. D at 68-69.) The Board further noted, with regard to the commitment offense, that "[m]ultiple victims were attacked, injured or killed in the same incident" and that the "motive for the crime was very trivial in relation to the offense." (Pet. Ex. D at 69.)

The Board also relied on Petitioner's criminal history, which indicated an "escalating pattern of criminal conduct and violence." (Pet. Ex. D at 69.) Petitioner's criminal history reflects two convictions for driving under the influence ("DUI"), "one of which was pled to reckless driving." (Pet. Ex. D at 69-70). In addition, Petitioner was arrested in March 1980 and charged with battery and making annoying phone calls, though the charges were ultimately dismissed. (Pet. Ex. D at 14). In July 1980, Petitioner was arrested for attempted robbery, but was released after

9

questioning. In August 1980, Petitioner spent ninety days in jail after being arrested and charged with "throwing a substance at a vehicle with intent to cause great bodily injury." (Pet. Ex. D 16, 70.) In October 1980, Petitioner was again arrested for burglary, assault with a deadly weapon and robbery. (Pet. Ex. D at 18.) Petitioner's criminal history culminated with his March 1981 arrest for the crimes upon which his current period of incarceration is based. (Pet. Ex. A at 4.)

The Board further noted that Petitioner has incurred at least two serious CDC 115 reports while incarcerated, as well as two less serious CDC 128 reports. (Pet. Ex. D at 34-35, 70). Of concern to the Board was that one of his serious CDC 115 charges involved a controlled substance. However, the Board also recognized that Petitioner had been disciplinary free since 1989, and commended him for this accomplishment. (Pet. Ex. D at 74.)

The Board also considered petitioner's substance abuse history and his most recent psychological report by Dr. Willis, which the Board noted was "somewhat unfavorable." (Pet. Ex. D at 70) Petitioner denied having a substance abuse problem during the hearing, and stated that no alcohol was involved in his commitment crime. (Pet. Ex. D at 25). The psychological report, however noted Petitioner's history of cannabis and alcohol abuse. (Pet. Ex. D at 71.) According to the report, Petitioner had been active in Alcoholics Anonymous ("AA") while incarcerated. (Pet. Ex. D at 70.) However, documentation in Petitioner's record indicated that his participation in AA has not been continuous. The Board appeared concerned that Petitioner had not sufficiently participated on a continuous basis in substance abuse and other self-help programming. (Pet. Ex. D at 71-72.) Dr. Willis' psychological report also diagnosed Petitioner with adult antisocial behavior personality disorder and noted that the disorder would require continuous effort on Petitioner's part to exercise vigilance and self-restraint. (Pet. Ex. D at 36.

Perhaps most significantly, the Board considered Petitioner's post-release plans with regard to residence, employment, and substance abuse programming. While he had letters of support from family members, he was unable to articulate with any specificity his post-parole employment plans. In addition, of considerable concern to the Board was Petitioner's intention to

1 set up residence, albeit with family members, in the same neighborhood as his victims' residences.
2 (Pet. Ex. D at 73.)  The Board found that Petitioner did "not have viable residential plans since they
3 [were] not realistic, and [he did] not have any acceptable employment plans."  (Pet. Ex. D at 73).

4 Lastly, the Board also noted that the District Attorney opposed granting parole to
5 Petitioner.  (Pet. Ex. D at 74).

6 Applying the federal *habeas corpus* review standard applicable to parole denials for
7 California state prisoners recently clarified by the Ninth Circuit, it appears that "some evidence"
8 supports the Board's determination that Petitioner was not suitable for parole at the time of his 2006
9 hearing.  As reviewed above, relevant portions of the evidentiary record support the recited factors
10 and their rational relationship to the determination that Contreras would pose an unreasonable risk
11 to public safety if released.  In addition, all factors articulated by the Board as the basis for its
12 decision are permissible considerations in parole suitability determinations under California law.
13 15 CAL. CODE REGS. § 2281(b)-(d).  This Court not may re-weigh the factors before the Board, nor
14 may the Court substitute its judgment for that of the Board.  Petitioner is not entitled to federal
15 *habeas corpus* relief on the grounds that the Board violated his due process rights by denying him
16 parole.

17 VI.     CONCLUSION

18 Accordingly, IT IS RECOMMENDED that Petitioner's petition for writ of *habeas*
19 *corpus* be denied.

20 These findings and recommendations are submitted to the United States District
21 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one
22 days after being served with these findings and recommendations, any party may file written
23 objections with the court and serve a copy on all parties.  Such a document should be captioned
24 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
25 shall be served and filed within seven days after service of the objections.  Failure to file objections
26 within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*,

11

158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In any objections he elects to file petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: June 15, 2010

                                                                  /s/ Charlene H. Sorrentino
CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE